UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TERINDA FURMAN,

    Plaintiff,

v.                                          Case No:   2:14-cv-191-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

This cause is before the Court on Plaintiff, Terinda Furman's Complaint (Doc. 1) filed on April 2, 2014. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2),

1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On November 29, 2010, Plaintiff filed an application for disability insurance benefits asserting a disability onset date of November 1, 2007. (Tr. p. 146-147). Plaintiff's application was denied initially on February 1, 2011, and on reconsideration on March 31, 2011. (Tr. p. 124,133). A hearing was held before Administrative Law Judge M. Dwight Evans ("ALJ") on July 12, 2012. (Tr. p. 36-90).   The ALJ issued an unfavorable decision on August 30, 2012.   (Tr. p. 19-29).   On January 28, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. p. 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on April 2, 2014.   This case is ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (See, Doc. 18).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has shown that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can

---

[1] Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2009. (Tr. p. 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her onset date of November 1, 2007 through her date last insured of September 30, 2009. (Tr. p. 21). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: status post total left knee replacement November 2007; status post total right knee replacement November 2008; fibromyalgia; lupus (in remission); osteoarthritis of the knee; and status post opioid dependence citing 20 C.F.R. 404.1520(c). (Tr. p. 21). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. p. 22). At step 4, the ALJ determined that as of the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. (Tr. p. 22). The ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work overseeing jobs as a remodeling contractor asserting that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. p. 28). The ALJ concluded that Plaintiff was not under a disability at any time from November 1, 2007, the alleged onset date, through September 30, 2009, the date last insured. (Tr. p. 29).

**D.   Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises one issue on appeal, that the ALJ erred by failing to adequately consider the opinion of Plaintiff's treating physician, Ronald Howard, M.D., a neurologist.   Plaintiff argues that the ALJ erred in failing to address an October 10, 2010 physical capacity evaluation form completed by Dr. Howard, Plaintiff's treating neurologist.   Plaintiff argues that on that form, Dr.

Howard found that Plaintiff was limited to sitting for 30 minutes at a time, standing 15 minutes at a time, standing a total of 2 to 3 hours in a workday, walking less than 1 hour in a workday, sitting a total of 4 to 5 hours in a workday, lifting 10 pounds occasionally and less than 10 pounds frequently, and missing approximately 4 days of work per month. (citing Tr. p. 378-379). Plaintiff acknowledges that the ALJ did address Dr. Howard's examination of Plaintiff which he conducted two weeks after Plaintiff's date last insured.

In addition, Plaintiff cites to the ALJ's statement that "Dr. Howard is not a psychiatrist, nor did he have longitudinal treatment history with the claimant to support the conclusion" that Plaintiff suffered from Adult Attention Deficit Disorder. Plaintiff argues, however, that Dr. Howard did have the longitudinal treatment relationship by October 10, 2010, the date he completed the physical capacity evaluation form, and is board certified in psychiatry (citing Tr. p. 27). Plaintiff argues that if the ALJ had properly considered Dr. Howard's opinion, he would have found Plaintiff to be disabled.

The Commissioner responds that that Dr. Howard's physical capacity evaluation form was completed on October 10, 2010, over a year after Plaintiff's date last insured. Further, Dr. Howard's opinion does not relate to the time period prior to the expiration of Plaintiff's insured status which was prior to September 30, 2009. The Commissioner contends that Plaintiff must prove that her disability existed prior to the date last insured. The Commissioner acknowledges that the ALJ failed to address Dr. Howard's October 2010 opinion and did not assess the weight to be given to this opinion, but the Commissioner argues that even if the ALJ was required to address this opinion, the error was harmless because the opinion did not relate to the time period during which Plaintiff was in an insured status.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by

the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The ALJ addressed Dr. Howard records, noting that he treated Plaintiff from 2009 through 2011. (Tr. p. 25). The ALJ also noted that in a letter dated October 15, 2009 which was two weeks after Plaintiff's date last insured, Dr. Howard described his findings from a physical examination conducted that same date. (Tr. p. 25). The ALJ quoted paragraphs from Dr. Howard's assessment. (Tr. p. 25). The ALJ thoroughly reviewed Dr. Howard's letter from October 15, 2009. (Tr. p. 25-27). The ALJ concluded that Dr. Howard's examination was conducted two weeks after Plaintiff's date last insured and is "the most comprehensive evaluation of the claimant's physical health closest to the date she was last entitled to Title II disability benefits. Since the claimant did not undergo a traumatic event during the period between September 30, 2009 and October 15, 2009, the date of this examination, one could logically conclude this report represents the claimant's state of health as of September 30, 2009. (Tr. p. 27-28). " The ALJ noted that Plaintiff was aware that she had become dependent on opioids and needed help to overcome this dependency, but also showed that she was using more pain medication than her degree of pain required. (Tr. p. 27). The ALJ noted that Plaintiff told Dr. Howard that her lupus was in remission, and the ALJ determined that Plaintiff's fibromyalgia was not so severe that it prevented Plaintiff from weaning herself off opioids. (Tr. p. 27). The ALJ noted that Plaintiff complained of difficulty walking and photophobia, but demonstrated a normal gait with Dr. Howard and there was no mention of photophobia in his examination records. (Tr. p. 27). The ALJ found that Plaintiff claimed Adult Attention Deficit Disorder ("ADD"), and Dr. Howard diagnosed her with ADD, but the ALJ discounted it because Dr. Howard is not a psychiatrist and he did not have a longitudinal treatment history with Plaintiff to

support that conclusion. (Tr. p. 27). The ALJ did not mention any other medical records or opinions of Dr. Howard.

A review of Dr. Howard's records shows that on October 15, 2009, he diagnosed Plaintiff with opioid dependence, lumbago, anxiety and insomnia, adult attention deficit disorder, fibromyalgia, and lupus. (Tr. p. 673). Plaintiff told Dr. Howard that her lupus was in remission. (Tr. p. 669). The specific record from Dr. Howard that Plaintiff argues the ALJ erred failing to address was the October 10, 2010 Residual Functional Capacity Questionnaire. (Tr. p. 378-380). Dr. Howard determined that the Plaintiff was diagnosed with lumbago, anxiety, fibromyalgia, and adult ADD. (Tr. p. 378). Dr. Howard found Plaintiff to have the symptom of pain which was constant, and her symptom of pain would interfere with her attention and concentration. (Tr. p. 378). Dr. Howard found that plaintiff could sit for 30 minutes at a time and stand for 15 minutes at a time. (Tr. p. 378). Dr. Howard determined that Plaintiff would need to sit in a recliner or lie down for 2 hours a day, could walk less than 2 hours in a day, could stand between 2-3 hours in a day, could sit between 4-5 hours in a day, and must be allowed to shift positions at will. (Tr. p. 378-379). Dr. Howard found that Plaintiff would need a break every 2 hours for 5-10 minutes. (Tr. p. 379). Dr. Howard determined that Plaintiff could lift less than 10 pounds frequently, 10 pounds occasionally, and never lift 20 or 50 pounds. (Tr. p. 379). Dr. Howard found Plaintiff would likely be absent from work for 4 times per month, and Plaintiff was not a malingerer. (Tr. p. 379). Dr. Howard did not list any other psychological limitations, including any limitations from ADD. (Tr. p. 379). Dr. Howard also completed an Onset Date Questionnaire (Tr. 380) dated October 10, 2010, which indicated that in his opinion Plaintiff had the limitations and restrictions outlined in the Residual Functional Capacity Form since October 15, 2009. (Tr. p. 380).

The issue is whether the ALJ erred in failing to address the Residual Functional Capacity Questionnaire and the Onset Date Questionnaire. It is uncontested that Plaintiff's date last insured was September 30, 2009, and Dr. Howard began treating Plaintiff after her date last insured. It is also uncontested that the ALJ failed to address Dr. Howard's Residual Functional Capacity Questionnaire and the Onset Date Questionnaire. The Residual Functional Capacity Questionnaire and the Onset Date Questionnaire were completed over a year after Plaintiff's date last insured.

Plaintiff bears the burden of proving she is disabled on or before the date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)(*per curiam*). In this case, Plaintiff must prove that she suffered from a disability between her onset date of November 1, 2007 through her date last insured of September 30, 2009. If a plaintiff becomes disabled after her date last insured, then her claim must be denied despite her disability. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011)(citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).

"When the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence." *Mason*, 430 F. App'x at 832. In the instant case, Plaintiff failed to provide any medical records which show that the opinion of Dr. Howard on October 10, 2010, over a year after Plaintiff's date last insured, was consistent with the medical records prior to the date last insured. Further, in this case, Dr. Howard specifically set forth the onset date of the limitations. Dr. Howard stated in his Onset Date Questionnaire that Plaintiff had the limitations and restrictions listed in the Residual Functional Capacity Form since October 15, 2009, which was two weeks after

Plaintiff's date last insured.  Plaintiff is relying on Dr. Howard's Residual Functional Capacity Form to prove that she was disabled, however, the Residual Functional Capacity Form may only be used to support medical records from the time before the date last insured and cannot be used to prove disability if the limitations began after the date last insured. The medical records of Dr. Howard dated October 10, 2010 are not relevant because the assessment did not state that it pertained to or related to the period of time prior to the date last insured.  Therefore, even if the ALJ erred in failing to address the medical opinion of Dr. Howard from October 10, 2010, the error was harmless, because the medical records and assessment did not state that they pertained to a time period prior to the date last insured. Remand is not warranted when an ALJ commits harmless error.  *See, Pichette v. Barnhart*, 185 Fed. App'x 855, 856 (11th Cir. June 21, 2006).

Dr. Howard did diagnose Plaintiff with ADD in his October 15, 2009 examination which was after Plaintiff's date last insured and did state that according to Plaintiff, she had a history of ADD.  The ALJ found that Dr. Howard's examination of this date was the most comprehensive evaluation of Plaintiff's physical health closest to the date last insured. However, Plaintiff failed to provide any medical evidence of record to support this diagnosis of ADD which caused Plaintiff functional limitations prior to the date last insured.  A "diagnosis [ ] is insufficient to establish that a condition caused functional limitations."  *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n. 6 (11th Cir. 2005)). Further, Richard Willens, Psy.D., a state agency psychologist did provide a report dated February 1, 2011 which stated that there was no medical evidence of record to support Dr. Howard's diagnosis of ADD on October 15, 2009, and no medical evidence of record that Plaintiff suffered from ADD prior to the date last insured. (Tr. p. 399). Therefore, the ALJ did not err in finding that there was insufficient medical evidence to support the conclusion that Plaintiff suffered from

ADD prior to the date last insured.

Plaintiff mentions that the ALJ failed to address state agency physician, Ruben Brigety, M.D.'s specialty of obstetrics and gynecology which Plaintiff compared to Dr. Howard's credentials of being board certified in psychiatry and neurology. Plaintiff fails to cite to the record concerning Dr. Brigety's opinion, and the ALJ did not address Dr. Brigety's one sentence report which stated, "I have reviewed all the evidence in the file, and the RFC of 2/1/11 is affirmed as written." (Tr. p. 415). Although Plaintiff does not mention it, the report Dr. Brigety was referring to was that of Richard Willens, Psy.D. (Tr. p. 399). Dr. Willens, who is qualified in psychology found that there was insufficient evidence in the medical records prior to Plaintiff's date last insured regarding Plaintiff's mental impairments. (Tr. p. 399). Dr. Willens noted that on October 15, 2009, Plaintiff went for a neurological consultation for opioid dependence, but this consultation was after the date last insured. (Tr. p. 399). The Court finds that the ALJ did not err in failing to address Dr. Brigety's area of specialization, and even if the ALJ erred, the error was harmless because Dr. Brigety was only confirming the underlying report of Dr. Willens whose area of specialization is psychology.

### IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending

motions and deadlines, and close the case.

   **DONE** and **ORDERED** in Fort Myers, Florida on May 11, 2015.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties